All right, our fourth case for today is MAO-MSO Recovery against State Farm Mutual Automobile Insurance. Mr. Hundley. Good morning. May it please the Court. David Hundley on behalf of the plaintiffs, as well as the additional appellants, myself, Christopher Coffin, and Courtney Stidham. I'd just like to bring to the Court's attention that Ms. Stidham, who now lives in North Carolina, is very regretful not to be able to be in the room today. As the Court knows, this is a putative class action brought on behalf of Medicare Advantage plans, who have not been reimbursed by State Farm for medical expenditures on behalf of their beneficiaries. Specifically, those individuals who were injured by State Farm insureds and for whom monetary settlements were paid. Mr. Hundley, let me ask you a question about the nature of the District Court's dismissal. So the District Court says that it's dismissing the case, quote, with prejudice, although it's a standing dismissal. But I think what the District Court really meant to say was, I'm dismissing on the basis of lack of standing without giving you permission to file yet another amended complaint. So there's sort of without prejudice in the sense of, I'm not resolving the merits, versus without prejudice having some implication about a future right to amend. And I think the District Court was finished with amendments and was just trying to say, this case is over, I've made my decision. And Judge, I think in the briefing we certainly discussed that line or that distinction between the idea of dismissing with prejudice and dismissing without leave to amend. For practical purposes, the effect is certainly the same. Yeah, but for us it's not. I mean, so for example, if it's dismissed because these people don't have standing to sue, somebody else might have standing to sue and principles of claim and issue preclusion working the way they do, that could be consequential. And as a matter of fact, if I remember correctly, just a week later, basically, the same District Court allowed a similar case to go forward, which again suggests to me that he didn't intend to be saying anything about the fundamental merits of the case. He was just saying you weren't the right people to be doing it. Right. I think that what's important here as far as the leave to amend is whether or not there's a substantive issue that cannot be cured, in which there's the Robertson case, which the Court authored, that talked about leave to amend. No, I understand. But I mean, at some point, we regard this as a matter of discretion for the district courts, right? And so this would have been the fourth amendment? We were up on our second amendment complaint. So the fourth version of the complaint would have been the next one. Can't the district judges at some point just say, you've tried enough, we're done? Well, I think absolutely in the right circumstances, judges certainly can do that. But I think the reason why there isn't a set number of you only get three amendments, you only get four amendments, is because it really depends on the facts of the case. And if this were our fourth try or third try at an automobile collision complaint, then I think the district court would be right to say you've had enough tries. But the district court didn't think you'd been diligent either. I mean, this difference between HFAP and HFHP, I guess the district court thought you just had to go on the Medicare website and you would see right away that it was HFHP that was the party in question. Right. I'm glad you brought that up, Judge. I'd like to address that particular issue. This arose from the decision that had happened a few days earlier out of the Southern District of Florida. And one of the issues that was brought up in that case was this notion of the Medicare website and whether that was a thermometer, an indicator of whether someone was a proper party to bring an MSP cause of action. And it's our position that it's not. That issue wasn't before the court in this case. But whether or not an entity is an MAO directly contracting with the government or is a first-tier downstream entity is a more complicated issue that was also before that judge And the decision is up on appeal in the 11th Circuit as to who qualifies as the proper party to bring that cause of action. But in this particular case, the context that has to be taken into consideration and that, frankly, the district court, we believe, didn't take into consideration was that what brought this Second Amendment complaint to the court was a scenario between Health First, Health Plans, and our client, MSP Recovery, LLC, engaging in a client relationship that had been done over and over again with many different Medicare Advantage organizations and has been done so since. And it involves not only reviewing and asserting whether or not this is the appropriate entity to pursue claims on behalf of, but it involves signing the contracts, the assignment that was part of our complaint and the tax, and was the one-word identification of what entity it is  So you're not arguing now that HFAP, as you alleged in the Second Amendment complaint, is an MAO that should be able to bring this, are you? Not at all. There's no question that, in retrospect, there was a mistake as far as what that entity was named. So you agree that the district court correctly dismissed the Second Amendment complaint for lack of standing. You just think the court should have allowed you another bite at the apple. The court should have allowed us to make those corrections, which we did. Within a matter of days, there was a non-proton assignment that was created. Well, that was after the fact, and you never filed an amended complaint. So I understand you brought that before the court's attention, but you didn't file a third amended complaint or seek leave to do so. Well, we did not file that. The court's order was dismissing the case of prejudice, so that's what brought us here. I understand, but you said that you did that, and that's not with the record. You certainly brought the factual information and the assignment before the court, but you didn't procedurally seek leave to file a third amended complaint or attach a third amended complaint correcting the factual errors. Well, that is correct. We never sought leave for that. What we did was follow the court's instruction, which was to file the supplemental pleadings to explain what was happening, and in response to the court's rule to show cause as to why there shouldn't be sanctions imposed. But it's important to recognize that when these parties sat down in this room and the same individual signed his name on behalf of the wrong of the two sister corporate entities, that that occurrence took place along with a massive data exchange in which our sophisticated client, who's in business to process and identify these claims, took that data, did what it does with regard to finding out when and in what instances. In this instance, State Farm, it believes, underpaid claims, and that's how we eventually selected RY as the exemplar, which is simply to show the district court that they're standing to pursue the action. And so what came to light, which no one on the plaintiff's side, any of the attorneys or the client, up until the point that this mistake of the entities was brought to light, had any idea. And there was nothing in the history of how these two companies interacted that would have raised a red flag. Nowhere where you could look back and say, you know what, that was the point when we should have realized that there was something wrong. And the Medicare website judge, as you brought up earlier, is not the litmus test of whether or not we have the right relationship with this company, which is a sophisticated health care company that also happens to contract with the government on behalf of Medicare beneficiaries. There was a mistake made. So it's this network of, are you placing any weight on the fact that these were so closely related, that it was just this one man who was the person authorized to act for both of them, as opposed to two stranger companies? Absolutely, in the sense that we're not saying, you know, we've talked about, maybe it's a bad example, we're not saying that we're McDonald's when we're actually Burger King. It is one individual on behalf of these two entities, and not only is it one person who's the chief operating officer for both of them, the actual entity itself that owns the contract with CMS, the actual MAO, Health First Health Plans, doesn't employ anyone. They have a company called Health First Administrative Plans, which, as its name implies, does all the administration. And so that person, Mike Keeler, the COO of Health First Administrative Plans and Health First Health Plans, is used to, on a day-to-day basis, doing everything for this company, including its work as an MAO. So again, everyone walked out of that room of signing that agreement, that contract, thinking, okay, now we're up and running. You're going to take our data, you're going to find out and pursue these claims on our behalf. And it wasn't on anybody's radar. It was the biggest surprise to everybody that that mistake had been made. And certainly in retrospect, although we argued that there's agency and ways in which to show that if this is all about one word, if that one word had been made right back on April 28, 2016, none of us would be here right now. But part of the district court's frustration comes from the fact that you are sophisticated parties, and you had been on notice for months that the defendants were challenging the standing in this case, and yet you didn't go and confirm these factual issues. Well, I mean, just to clarify, we were on notice about this particular mistake for a matter of days. Correct, but you were certainly on notice about standing from the first motion to dismiss that was filed months before this. Right, and again, I'd like to urge the court that if we were litigating a case for which the path had been very well worn and we just somehow didn't get it, then we'd suffer the ire of the district court, I think, a lot more legitimately than we do now. But these are pioneering cases. The reason that there's so much contention here is because we are trying to upset the status quo as to how entities like State Farm reimburse Medicare Advantage organizations. As opposed to the trust fund directly, which you've argued is not before us, as I recall. They offer it as an alternative grant at this point. Correct. They're saying for the first time on appeal that there's no legitimacy for these actions at all. Well, they argued that below, didn't they? It just wasn't addressed by the district court. They did not judge, and in fact, in their motion to dismiss, and let me give you the particular citation, which is in page 15 of our reply brief, document 67 in the record at pages 1 and 2, State Farm says this private right of action is afforded to MAOs. And so the idea that there's not an actual right of action on behalf of these entities was raised for the very first time on appeal. What they do say is that the district court, in its preliminary rulings, acknowledged in Rehobandia, acknowledged Humana versus Western Heritage and the precedent for applying the private cause of action for MAOs, even though this court had not actually ruled on that particular issue. But to go back to the issue of notice, we approach these cases cautiously across the country as to how to properly allege them, because we don't want to involve individual Medicare Advantage beneficiaries in a lawsuit that isn't about them, frankly. That seems to be part of the difficulty the district court had, though, because the information is coming to the district court not through you, but through the opposing counsel, and it's an affidavit that's been filed in another case. Well, again, as far as the notification of this mistake with regard to the health-first entities, there's no doubt that the timeline is that on April 26th is when State Farm first brought this issue to our attention, which was two days after the auto owner's decision was issued in the Southern District of Florida. And the actual filing in that case that first raised the issue preliminarily there was only on March 16th. But the attorneys involved in this case weren't of record in that case. Document 80 in this docket, I can tell you, was the first time that this issue was raised to me and to my colleagues, and you can imagine our surprise recognizing that there was this particular mistake that was made. But the point I was trying to make earlier is that we didn't allege specific beneficiaries and exemplar MAOs, because we didn't want that to be a part of the record in the court. And as we've developed the Second and Third Amendment complaints, not just here, but in other courts, we've come to an agreement with the courts as to what level of detail the courts want with regard to standing specifically. It's not about the substance of the volume of claims, but whether or not we actually have claims that give us standing to pursue them. Okay, you need to stop if you want any rebuttal time. Thank you, Judge. Thank you. Mr. Gahn? May it please the Court. Jim Gahn on behalf of State Farm. As Judge St. Eve identified, there's no dispute that plaintiff's complaint was properly dismissed. The only question is whether plaintiffs who are a group of plaintiff's attorneys and litigation financing companies should have been granted leave to file their fourth complaint in an attempt to establish standing. So I'll tell you, Mr. Gahn, what this reminds me of is various labor cases I've seen. These are very closely related entities, HFAP and HFHP. And so although the district court was certainly correct to say that corporate form makes a difference and that doesn't mean that they're all the same person, on the other hand, it makes understandable how somebody might mix up what a piece of paper is doing versus what its agent, HFAP, is doing. And it seems that one could, I'll do it at two layers, one could at least, number one, say that it was an understandable enough mistake that you wouldn't sanction somebody for making it. Number two, a district court might choose to exercise its discretion to allow that last amendment. But that's a discretionary matter. I think that's a closer call. But I think to make it seem as though these are two organizations with crisp lines between them is simply not consistent with the facts. Thank you, Judge Wood. You certainly have framed a very important issue here. But there is a clear answer. And first of all is that these plaintiffs were on clear notice that standing was absolutely important. But there are lots of theories why standing might fail. And I wonder to what extent is this there. You could have a causation theory. You could have a redressability theory. You could say you aren't the entity who's been hurt, so you haven't suffered injury in fact. And I'm not sure that these theories were as consistent as you're suggesting. Your Honor, Judge McDade in his January 2018 order dismissed the first amended complaint and basically instructed plaintiffs that you need to connect the dots in order to establish standing to show an MAO and a Medicare beneficiary that State Farm was somehow responsible in not paying or not reimbursing that Medicare Advantage Association. Right, but that didn't have anything to do with the HFAP, HFF, whatever it is, HP difference. That had to do with who are these exemplar people and did they have payments made on their behalf. And is there any relation between what the MAOs get and the Medicare trust? I mean, there were a whole package of issues that were not in the front of the district court's mind at that stage because this issue hadn't come up. You weren't sitting there saying HFAP isn't a Medicare beneficiary organization. You were focused on other flaws. What we were focused on, Your Honor, was to say give us an example. Exactly. Give us an example of what State Farm did wrong. And so you wanted like DY or something. You wanted a case where State Farm had misstepped. That's quite different from this issue. Well, no it isn't, Your Honor. So in addition to plaintiff being on notice, we also need to look at their own description of the differences between these two companies on page 27 of their opening brief. On page 27 of the opening brief, they admit that the MAO, that the Health First MAO is inert. And they also argue that the Health First administrative company could be deemed to have paid the amounts in question. Right, but these are all the ex-post arguments. I'm trying to look at it ex-ante. What's actually unfolding in this litigation and what arguments are you making? Yes, they're standing arguments, but they're not the same one.  And again, certainly it's a problem. There's no doubt in my mind about that. But what's the solution? You know, to sanction, to allow amendment, or to say no amendments, but now at this point let the chips fall where they may. There are different things the district court could have done. Well, the district court was also understood, and this was part of the court's order in the related MAO case, that standing needs to be established before the lawsuit has been filed. And plaintiffs admit that the true MAO, they had no standing with that MAO at the time that this complaint was filed. Now, they try a little bit of magic with a new assignment that they call a nunk-pro-tunk assignment. But the cases that they cite in order to support a nunk-pro-tunk assignment don't apply here. Right, I mean, they're just trying to salvage something in light of later information. And again, I'm totally with you that the correct entity is HP, not AP, so to speak. But it's the what-do-you-do-about-it problem that has me, that I think is the interesting one in this case. Because when you have such closely related entities, the same human being, you know, acting for both of them, it does strike me as, at least from an equitable standpoint, and the sanctions have something to do with equity, a rather different situation. Your Honor, I think Judge McDade decided what are you going to do about it. He was very impatient with them. He writes an opinion that says, don't you know, you know, that different corporations are different people? I wouldn't read that as impatience. I would read that as Judge McDade giving strict instructions as to what he was expecting with the second amended complaint. And those instructions not being followed. Not only that, but when this issue was raised, Your Honor, with the supplemental briefing, Judge McDade said, all right, we've got the auto owner's decision here. It looks like you've alleged the wrong MAO here, that this is the administrative company, not the MAO. Let's take supplemental briefing and see where we go from here. And you know what happened with that briefing? They didn't raise their hand and said, we got it wrong, that these entities are intertwined, it's the same person. They tried to argue some sort of assignment theory. That seemed to frustrate the district court more than anything. Well, of course it's frustrating, because the district court gave a specific instruction as to what was wrong with this lawsuit, and they refused to acknowledge it. And instead, they made additional arguments that tested not only the judge, but just the realm of making a good faith argument. That seemed to be what was behind the sanctions. Would you agree with that? I believe that, yes, that was. In fact, the court's own opinion said something to the effect of, with this auto owner's supplemental briefing, that's when things got hairy. So yes, that was, we're talking about multiple instructions. Number one, the January opinion saying, connect the dots, give me an example. Then the auto owner's supplemental briefing instruction, which is, tell me what's wrong with this case, and what are you going to do about it? And they didn't respond to that. They were dancing around that issue, no doubt because they knew that standing needed to be established at the time the lawsuit was filed. And if they were to acknowledge they got the wrong MAO, they would have known at that point in time the case would have been dismissed on those grounds, because the MAO, there was no assignment at the time that the complaint was filed. So what did they need to do to- would never make an agency argument. Well, an agency argument certainly- Because that would be at the time. Right. That would solve that problem. Right, but you can't make an agency argument based upon this assignment. No, but what about- When the assignment doesn't reflect, doesn't support the agency argument. What about agency as a matter of fact at the time, actually throughout, apparently, the period of these entities' operations? So- HFAP has been acting as the agent of HFHP. Right. What we have here- Restatement of agency would certainly support that. Right. So a responsible lawyer shouldn't try to salvage the complaint that way, recognizing, as you argue, that it might be too late for nunk-pro-tunk, it might be too late for other kinds of cures. And in this instance, arguing agency wouldn't have gotten them where they needed because it's the MAO, according to their theory, on a private cause of action that needs to bring that private cause of action, not the agent. So they needed the MAO in this case. And so their arguments were what they believed was necessary to save their own allegations. And that was certainly improper. Do you want to respond to Mr. Huntley's point about the private cause of action issue being raised or not being raised below? Yes. So the section that Mr. Huntley cites to in our brief is just reciting what the cause of action is. We're not acknowledging that this is a proper cause of action. But did you affirmatively argue that it was not, as you have done in your brief in this court? We did not. But let me explain. So we filed that motion to dismiss while the case was pending in the Southern District of Illinois. And we were focusing on subject matter jurisdiction arguments. One could say, well, that private cause of action was certainly a threshold question, perhaps. But what was also a threshold question is whether the district court, whether it be the Southern District of Illinois or transferred to the Central District of Illinois, had subject matter jurisdiction. And we filed what amounted to the Twombly type of arguments that there were certainly insufficient facts to support a claim, both on standing grounds and 12b6 grounds. I don't see how in any fashion that's a waiver of the argument that there is a, that we would contest that there's a private right of action. Now, when Judge McDade made his ruling in January of 2018 dismissing the case for lack of standing, he decided, sua sponte, that there is a private right of action looking at the Third Circuit and the Eleventh Circuit. We did not have any opportunity to respond or to rebut that. But now we do. We filed a cross appeal to secure this court's jurisdiction to hear those issues, if it chooses to use those grounds as alternative grounds to support a dismissal with prejudice. When you filed your motion to dismiss for lack of standing, you also raised 12b6 arguments, didn't you? We did, but they were essentially the same Twombly type of arguments, which there were insufficient facts alleged. So why haven't you waived the private right of action if you didn't include that with the other 12b6 arguments? Right. Well, first of all, under Rule 12, you're not waiving any arguments that you don't bring in a motion to dismiss. Rule 12, I believe it's subsection H, specifically says that you preserve, you know, all grounds for dismissal. 12b6 is one of those that can be raised up until the end of a trial. But you do have to raise, in the district court, in a timely manner, in accordance with the schedule the district court has put forth and everything else, a 12b6 argument. There's no doubt that Rule 16 and other rules, the district court's local rules, have a role to play here, too. So you can't just come forth at the court of appeals level, 12h is quite clear about that, and suddenly say, oh, and by the way, the complaint fails to state a claim on which relief can be granted. Well, Your Honor, in the district court, the case never got beyond the pleading stage. That's not our problem. But if you didn't rest on 12b6 as a ground for recovery in the district court, then it's too late to do it here. Well, we did raise a 12b6 argument in the district court, albeit we didn't frame the substantive issue of whether a private cause of action does exist. Well, and that's waiver. That's the problem. It's not fair to the district judges to come up here and suddenly pull another rabbit out of the hat. They need to be told what's on the table. And 12h says that, there are a few exceptions, but it says that you waive if you don't raise it, again, with a few exceptions. Well, with that said, and I have five seconds, this court still has the ability to hear that issue if it chooses, on multiple grounds, of using discretion and also supporting a dismissal with prejudice. All right. Thank you very much. I think you've pretty much used up your time, Mr. Hundley, but I'll give you a minute. I appreciate that. Judge St. Eve, you mentioned the frustration that was caused by the agency argument, and I totally agree. It's very clear that that's what frustrated Judge McDade. With regard to sort of closing up this issue about the sanctions part of it, which we haven't really talked that directly about it, the issue of frustration and what can be done to cure that, Judge Wood authored the Hartmack's decision with regard to sanctions, talking about how they should be done sparingly and how they might affect creativity and have a larger impact on the case. I think that's certainly something to keep in mind here. I think enough has been said about the waiver issue or the Goyvich case that was cited by State Farm. They've applied backwards in this particular case. But the last substantive point I'd like to make is this idea of connecting the dots and the ability to allege standing. In our Second Amendment complaint, not only do we select an exemplar claimant, but our appendix at A65 through 93 is an entire listing. It's redacted from the actual beneficiary's names here, but that was provided to State Farm, of all the other times in which they've been reporting for potential claimants. And also within the record, as this issue was brought to the fore, was the ability to narrow those down to other exemplar claimants. So we had the ability to make those changes if necessary. If I may, just on the one thing, if the court is entertaining at all upholding the sanctions, I would ask that you please, I don't think anyone should, but if anybody does, uphold them for me. It's my signature on the pleadings. My colleagues are in the signature block. There's no support of the fact that they did anything that was offensive to the court. And so in retrospect, do I regret the way we argued that argument because of the way the court didn't accept it very well? Yes. Do I think we did anything that requires Rule 11 sanctions? No. But if so, let it just be the person whose signature line is on it, which is me. Thank you. All right. Thank you very much. Thanks to both counsel. We'll take the case under advisement.